IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

GLENN HOPLER, on behalf of himself
and all others similarly situated,

    Plaintiff,

Case No. 2:20-cv-00754-LA

v.

ZURN PEX, INC.,

    Defendant.

**FIRST AMENDED CLASS ACTION COMPLAINT**

The allegations herein are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to all other matters based on an investigation by counsel.

**NATURE OF THE ACTION**

1. Plaintiff brings this class action for economic damages and other legal and equitable remedies because he and members of the putative classes did not get what they paid for after purchasing defective QickClamp Crimp Rings (the "Product" or the "QickClamps"), which are manufactured, distributed and sold by Defendant Zurn PEX, Inc. (hereinafter, "Defendant" or "Zurn").

2. Defendant describes its QickClamp System as "a one-tool crimp solution used to effectively and conveniently make connections for 3/8", 1/2", and 3/4" PEX crimp fittings." In other words, Zurn QickClamps are used to seal connections between PEX water pipes and the polymer, brass or copper fittings that connect them. The sole purpose of the QickClamps is to apply force to these connections in the form of a tightened metal band so that water cannot leak

1

out.

3. Zurn QickClamps fail to perform as advertised. They do not prevent leaking for long. A properly-performing clamp would be made out of a metal not susceptible to stress corrosion cracking ("SCC"). Zurn's QickClamps are instead made from SCC-susceptible stainless steel that corrodes when exposed to moisture and chlorine. In addition, Zurn QickClamps are excessively thin which subjects them to higher levels of stress.

4. The result is that Zurn QickClamps are extremely prone to failure. Over just a few years or less, the clamps quickly corrode and crack simultaneously. As a result, the joints that are supposed to be sealed shut start leaking, rendering them unsuitable for their principal and intended purpose. The Zurn QickClamps are thus entirely worthless (or, at bare minimum, worth significantly less than their purchase price), and consumers did not get what they paid for.

5. Independent ASTM G36 testing (a standard method to evaluate stress corrosion cracking of metals and alloys) performed on Defendant's QickClamp Crimp Rings revealed that Defendant's QickClamp Crimp Rings exhibited an extremely high failure rate due to stress corrosion, indicating that each unit (3/8", 1/2", and 3/4") was unfit for its intended purpose, and also indicating a design defect inherent in each unit Defendant sold.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction over Defendant. Defendant agrees that "for purposes of this action only, that the Court has personal jurisdiction over Zurn Pex, Inc." *See* ECF No. 8, at 1.

7. This Court has subject matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which

at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

8. Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the manufacturing, distribution, and sale of Zurn QickClamp Crimp Rings, and decisions related to design and sale of that product rendering, occurred within this District. Moreover, "Zurn further agrees, for the purpose of this action only … venue is proper." *See* ECF No. 8, at 1.

## PARTIES

9. Plaintiff Glenn Hopler is, and at all times mentioned herein was, a resident of Lincroft, New Jersey, and a citizen of the State of New Jersey. In or about May 2012, Plaintiff purchased hundreds of Zurn QickClamp Crimp Rings through the plumber he had contracted to help him build his house. Plaintiff purchased the QickClamp Crimp Rings based on Defendant's assertion that they were capable of sealing connection between PEX water pipes. Plaintiff's licensed plumber installed the Zurn QickClamp Crimp Rings soon thereafter and his home passed all subsequent inspections.

10. Within the last two to two-and-a-half years, Plaintiff realized that his Zurn QickClamp Crimp Rings started to fail. Specifically, metal seams in the QickClamps started to burst, which caused leaks. At first, one or two small leaks appeared, but over the ensuing months the problem became increasingly worse. QickClamps installed throughout this house began to fail one after the other, each resulting in leaks. Although the defective Zurn QickClamp

Crimp Rings have cost Plaintiff out-of-pocket expenses, Plaintiff seeks relief, on behalf of himself and similarly situated purchasers, *only* for the price he paid for Defendant's defective QickClamps. On February 1, 2019, Plaintiff filed a product claim with Defendant informing Defendant of the defective nature of the QickClamps he purchased. After receiving no response, Plaintiff's attorney friend wrote Defendant a follow up letter. Finally, Defendant responded on September 23, 2019 on Zurn letterhead but signed by an employee of Rexnord Corp. Therein, Zurn denied that there was any defect in the clamps. But this was not true. The use of low-grade and excessively thin stainless steel in the QickClamps rendered them prone to corrosion and cracking. As a result of these design defects, Plaintiff's QickClamps failed. Had Plaintiff known that there was a design defect in the Zurn QickClamp Crimp Rings, he would not have agreed to purchase them or, at minimum, to pay as much as he did for them.

11. Defendant Zurn Pex, Inc. is a Delaware corporation with its principal place of business located in Commerce, Texas.

## TOLLING OF STATUTE OF LIMITATIONS

12. Any applicable statute of limitations has been tolled by the deceptive conduct alleged herein. Through no fault or lack of diligence, Plaintiff and Class members were deceived regarding the Product's defect and could not reasonably discover the latent nature of the defect.

13. Plaintiff and Class members could not reasonably discover Defendant's deception with respect to the defect in the Product prior to experiencing a failure and/or being informed of the reason for the failure. Within the time period of any applicable statutes of limitations, Plaintiff and Class members could not have discovered through the exercise of reasonable diligence that Defendant was concealing the Product's defect.

14. Plaintiff and Class members did not discover and did not know of any facts that

would have caused a reasonable person to suspect that Defendant was concealing a latent defect and/or that the Product contained defective components prone to premature stress corrosion cracking. As alleged herein, the existence of the defect was material to Plaintiff and Class members at all relevant times.

15. At all times, Defendant is and was under a continuous duty to disclose to Plaintiff and Class members the true standard, quality, and grade of the Product and to disclose the defect and any risk associated with the premature stress corrosion cracking.

16. Defendant knowingly, actively and affirmatively concealed the facts alleged herein including the Product's defect. Plaintiffs and Class members reasonably relied on Defendant's knowing, active, and affirmative concealment.

17. For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendant's fraudulent concealment and Defendant is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

18. Pursuant to Fed. R. Civ. P. 23, Plaintiff seeks to represent a class defined as all persons in the United States who purchased a Zurn Qickclamp Crimp Ring (the "Class").

19. Plaintiff also seeks to represent a subclass defined as all persons in New Jersey who purchased a Zurn QickClamp Crimp Ring (the "New Jersey Subclass" or "Subclass").

20. Members of the Class and Subclass are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class and Subclass number in the hundreds of thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution

records of Defendant and third-party retailers and vendors.

21. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: whether Zurn QickClamp Crimp Rings have a design defect, whether Zurn QickClamp Crimp Rings are fit for their intended purpose, and whether Defendant was unjustly enriched.

22. The claims of the named Plaintiff are typical of the claims of the Class and Subclass in that the named Plaintiff purchased Zurn QickClamp Crimp Rings with a design defect and which leaked.

23. Plaintiff is an adequate representative of the Class and Subclass because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

24. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class and Subclass members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of

Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CLAIMS FOR RELIEF

### COUNT I
**(Breach Of Implied Warranty)**

25. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

26. Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendant.

27. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that Zurn QickClamp Crimp Rings were fit for their ordinary purpose, i.e. sealing connections between PEX piping and fittings.

28. Defendant breached this implied warranty because Zurn QickClamps Crimp Rings are in fact not fit for their ordinary purpose. The QickClamps were defectively designed because they are made with low-grade stainless steel that is too thin which renders them prone to corrosion and cracking, then leaks.

29. Plaintiff and members of the Class and Subclass purchased the QickClamps in reliance upon this implied warranty. But because the QickClamps were defectively designed, members of the Class and Subclass did not receive the goods as warranted.

30. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and members of the Class and Subclass have been injured and harmed because they would not have purchased the QickClamps on the same terms if they knew about the design defect. In addition, many of the Class and Subclass members have sustained injuries in the form of property damaged caused by the faulty QickClamps.

## COUNT II
### (Unjust Enrichment)

31. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

32. Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendant.

33. Plaintiff and members of the Class and Subclass conferred benefits on Defendant by purchasing the QickClamps. In return, Defendant should have provided Plaintiff and members of the Class and Subclass with QickClamps that were not defective, i.e. with QickClamps that were not prone to corrosion, cracking and failure.

34. But Defendant's retention of the revenue obtained for the QickClamps is manifestly unjust and inequitable because the QickClamps were defective. Plaintiff and members of the Class and Subclass paid for clamps that could seal the joints between PEX pipes and fittings, but instead received faulty clamps that were destined to fail and cause leaks.

35. Plaintiff and members of the Class and Subclass are entitled to restitution in the amount of Defendant's ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct. Plaintiff and members of the Class and Subclass therefore seek an order requiring Defendant to disgorge their gains and profits to Plaintiff and members of the Class and Subclass, together with interest, in a manner to be determined by the Court.

## COUNT III
### (Violation of New Jersey's Product Liability Act)

36. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

37. The QickClamp Crimp Rings were not reasonably fit or suitable for its intended purpose because, as explained *supra*, it was designed in a defective manner. Specifically, Defendant used inferior metal to make the products rendering them overly susceptible to stress corrosion cracking. In addition, the design of the products rendered them excessively thin, also contributing to early stress corrosion cracking. Accordingly, Zurn's QickClamp Crimp Rings are not suitable for sealing connections between PEX water pipes—the product's sole purpose.

38. As a result, the QickClamp Crimp Rings caused damage to Plaintiff.

39. Defendant, as the seller and manufacturer of its QickClamp Crimp Rings are liable under the New Jersey Products Liability Act ("NJPLA"), and is thus a direct participant in the tort committed against Plaintiff and members of the classes.

40. Defendant acted in a willful, wanton, and/or malicious manner, thereby entitling Plaintiff to punitive damages.

41. As a result of Defendant's violation of the NJPLA, Plaintiff and members of the class have suffered and will continue to suffer damages.

## COUNT IV
**(Violation of the New Jersey Consumer Fraud Act "NJCFA")**

42. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

43. Plaintiff brings this claim on behalf of himself and the members of the New Jersey Subclass.

44. The NJCFA prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with

the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice … ." N.J.S.A. § 56:8-2.

45. Plaintiff and members of the Class and New Jersey Subclass are consumers who purchased the QickClamp Crimp Rings for personal, family, or household use.

46. In violation of the NJCFA, Defendant employed unconscionable commercial practices, deception, fraud, and/or false pretense by providing QickClamp Crimp Rings that were (1) made with inferior metal, and (2) excessively thin, thus rendering them susceptible to premature stress corrosion cracking when used for their principle and intended purpose, and posed an undisclosed risk to consumers who purchased and installed the QickClamp Crimp Rings in their homes. Further, Defendant failed to disclose these defects and corresponding risks in violation of the NJCFA.

47. Defendant's omissions were material to Plaintiff and members of the Class and New Jersey Subclass. When Plaintiff and members of the New Jersey Subclass purchased the Products, they reasonably relied on the reasonable expectation that the Products would perform as intended throughout the useful lifespan of the Products. Had Defendant disclosed that the Products were prone to premature failure, Plaintiff and members of the New Jersey Subclass would not have purchased the Products, or would they have paid less for them.

48. Defendant knowingly concealed, suppressed and/or omitted the existence of the Product's defect at the time of sale and at all relevant times thereafter. Further, Defendant unconscionably marketed the Class Vehicles to uninformed consumers in order to avoid the cost of a recall or re-design and re-manufacture of the Product, and so that Defendant could maximize profits by selling Products containing the undisclosed latent defect.

49. Defendant owed a duty to disclose the Product's defect to Plaintiff and members of the New Jersey Subclass because Defendant possessed superior and exclusive knowledge regarding the defect and the risks associated with faulty connections between PEX water pipes. Rather than disclose the defective nature of the Product, Defendant intentionally concealed the defect with the intent to mislead Plaintiff and members of the Class and New Jersey Subclass in order to sell additional Products.

50. Defendant knew, or should have known, that using inferior metal for a crimp ring intended to securely seal connections between water pipes could cause premature stress corrosion cracking, and render the Product useless. Defendant also knew, or should have known, that using excessively thin metal for a crimp ring intended to securely seal connection between water pipes could cause premature stress corrosion cracking, and render the Product useless.

51. Had Plaintiff and members of the New Jersey Subclass known about the Product's defect at the time of purchase, they would not have bought the Product or would have paid as much less for them.

52. As a direct and proximate result of Defendant's wrongful conduct in violation of the NJCFA, Plaintiff and members of the New Jersey Subclass have suffered and continue to suffer harm by the threat of premature stress corrosion cracking in the Products and/or actual damages in the amount of the cost to replace the Products, and damages to be determined at trial.

53. As a result of Defendant's fraudulent and/or deceptive conduct and/or omissions, Plaintiff and members of the Class and New Jersey Subclass are entitled to actual damages, treble damages, costs, attorneys' fees, and other damages to be determined at trial. *See* N.J.S.A. § 56:8-19.

54. Plaintiff and members of the New Jersey Subclass also seek an order enjoining

Defendant's unlawful, fraudulent and/or deceptive practices, and any other just and proper declaratory or equitable relief available under the NJCFA.  See N.J.S.A. § 56:8-19.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a. For an order certifying the Class Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as a representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

b. For an order declaring Defendant's conduct violates the laws referenced herein;

c. For an order finding in favor of Plaintiff, the Class, and the Subclass on all counts asserted herein;

d. For compensatory damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pleaded or as the Court may deem proper; and

h. For an order awarding Plaintiff, the Class, and the Subclass their reasonable attorneys' fees, expenses, and costs of suit.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: August 7, 2020

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Joseph I. Marchese*
Joseph I. Marchese

Joseph I. Marchese
888 7th Avenue
New York, NY 10019

Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  jmarchese@bursor.com

*Attorneys for Plaintiff*